# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

BILLY PENNINGTON, BARBARA
PENNINGTON and all parties
similarly situated,

        Plaintiffs,

    vs.                    **Case No. 10-1344-RDR**

EQUIFIRST CORPORATION,
et al.,

        Defendants.

_____

## MEMORANDUM AND ORDER

I.  BACKGROUND

On January 31, 2011, this court issued an order in reaction to motions to dismiss filed by all of the defendants in this matter. Doc. No. 44. The court granted plaintiffs 30 days to obtain service of process upon defendant Bank of New York (BONY). The court also granted plaintiffs 30 days to submit a proposed amended complaint which the court would assess to determine whether it would be futile to grant plaintiffs leave to file the amended complaint and whether the action should be dismissed as to some or all of the defendants. Plaintiffs have submitted a proposed amended complaint. Doc. No. 47. Plaintiffs also made service upon defendant BONY which led to a motion to dismiss from defendant BONY. Doc. No. 49. In response to the motion to dismiss, plaintiffs filed a second amended complaint (Doc. No. 53), which the court has stated we will treat as a proposed amended complaint.

Doc. No. 55. Plaintiffs have also filed a memorandum in opposition to defendant BONY's second motion to dismiss. Doc. No. 54.

Plaintiffs filed their original complaint in this case on October 4, 2010.

This order addresses the question of whether plaintiffs should be permitted to file an amended complaint and whether defendants' various motions to dismiss should be granted or denied. The court incorporates in this opinion the recitation of standards applicable to the review of <u>pro se</u> pleadings and motions to dismiss that was contained in the court's January 31, 2011 order. Doc. No. 44 at pp. 8-10.

The court may deny leave to amend a complaint if the amendment would be futile, that is, if the complaint would be subject to dismissal for any reason even with the proposed amendment. <u>Watson ex rel. Watson v. Beckel</u>, 242 F.3d 1237, 1239-40 (10th Cir. 2001); <u>Grossman v. Novell, Inc.</u>, 120 F.3d 1112, 1126 (10th Cir. 1997).

After comparing the two proposed amended complaints, the court shall focus upon Doc. No. 53, the later proposed amended complaint. The proposed amended complaints are similar in most important respects, but the later proposed amended complaint adds a RICO claim and a few factual allegations, while deleting some paragraphs regarding the related state foreclosure action.[1]

---

[1] Doc. No. 53 at ¶ 6 also describes "Protium Finance LP" as a defendant, although Protium Finance LP is not listed as a defendant in the caption of the proposed amended complaint or mentioned in

II.  PLAINTIFFS' PROPOSED AMENDED COMPLAINT - Doc. No. 53

The proposed amended complaint lists four causes of action: 1) TILA/RESPA violations against defendants EquiFirst Corporation ("EquiFirst") and Mortgage Electronic Registration Systems ("MERS"); 2) unjust enrichment against all defendants; 3) submitting false documents to a court against the defendant law firm Martin, Leigh, Laws & Fritzlen ("MLLF"), as well as defendants BONY and C12 Capital Management d/b/a Protium Master Mortgage LP; and 4) a RICO claim against all defendants.

The proposed amended complaint makes the following factual allegations.  Plaintiffs signed documents presented to them by EquiFirst Corporation on March 23, 2007.  Doc. No. 53 at ¶ 11.  On the same date plaintiffs signed a promissory note for $115,200.00 listing EquiFirst as the lender and a mortgage on real property in Andover, Kansas.  Id. at ¶¶ 12 & 13.  The mortgage identifies the "nominal lender on the mortgage" as EquiFirst and states that MERS is acting solely as the nominee for the lender and the lender's successors and assigns.  Id. at ¶ 13.

The complaint further alleges that EquiFirst was a "fictitious lender" that "never funded the alleged loan" and merely transferred the promissory note to an unknown recipient.  Id. at ¶¶ 16 & 17.

---

defendant's prior pleadings.  For the reasons described in this order and the January 31, 2011 order of the court, plaintiffs shall not be granted permission to add Protium Finance LP as a defendant in this matter.

The complaint asserts that EquiFirst took the mortgage and pooled it with other mortgages as part of a trust "known as EquiFirst Loan Securitization Trust 2007-1, which was sold to underwriter, Barclays Capital, Inc., who further sold mortgage pass through certificates . . . as a securities transaction to untold numbers of buyers worldwide." Id. at ¶ 18. Plaintiffs allege that none of the listed defendants in this case were more than "servicing agents as none of the defendants funded the loan and defendants were never the holder in due course of the said Promissory Note and Mortgage." Id. at ¶ 19.

Plaintiffs state that they first became aware that their rights may have been violated on or about May 2009 and began withholding payments. Id. at ¶ 20. Plaintiffs allege that on or about December 28, 2009:

> defendant BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ SERVICING CORPORATION fabricated a fraudulent Assignment of Note and Mortgage naming Assignors as MERS, solely as nominee for EquiFirst Corporation, its Successors and Assigns. The assignment further named defendant The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust as the Assignee(s). . . .

> On or about January 12, 2010, defendants THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION (BONY) and defendant C12 CAPITAL MANAGEMENT LP doing business as PROTIUM MASTER MORTGAGE LP and defendant MARTIN, LEIGH, LAWS & FRITZLEN, P.C. knowingly and willing[ly] acted in concert and filed fictitious in the District Court of Butler County Kansas, Case # 2010CV0007.

> The false representations and documents filed by the defendants acting in concert with each other, led to a foreclosure judgment being issued against the plaintiffs.

Id. at ¶¶ 28, 29 & 30.

Paragraphs 31 through 42 of the proposed amended complaint are essentially an argument for tolling the three-year limitations period for rescinding a transaction under TILA. Plaintiffs cite Ramsey v. Vista Mortgage Corp., 176 B.R. 183 (B.A.P. 9th Cir. 1994) and Jackson v. Grant, 890 F.2d 118 (9th Cir. 1989), and argue that defendant EquiFirst is falsely representing that it loaned plaintiffs money "when in fact defendant EquiFirst was only serving as an intermediary for some other entities (Wall Street investors) to lend the plaintiff[s] money and as such no meeting of the minds ever existed, which is required for a lawful contract." Id. at ¶ 41. Plaintiffs contend that the "true lender must be identified before the 3-year limitation[s] [period] begins to run." Id. at ¶ 42.

Although the proposed amended complaint refers to rescission in the section of the document labeled "**TOLLING OF TIME FOR TILA/RESPA VIOLATIONS**," rescission is not mentioned in the complaint's description of the causes of action and claims for relief. Under "claims for relief," plaintiffs ask the court to set aside the state court foreclosure judgment and that the court find that plaintiffs are the owners in fee simple and entitled to possession of the subject property. Id. at ¶¶ 62 & 66. Plaintiffs further request that, pursuant to RICO, "defendants and their criminal organizations and enterprises be closed and dissolved, and

any other fines this Court sees fit." <u>Id</u>. at 66.

III.  PLAINTIFFS' FIRST CAUSE OF ACTION

Plaintiffs' first cause of action in the proposed amended complaint refers to "TILA/RESPA violations," in other words violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 <u>et seq</u>. and the Real Estate and Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 <u>et seq</u>.  In the proposed amended complaint plaintiffs allege that plaintiffs did not receive any TILA disclosures "at all" (Doc. No. 53 at ¶ 44) and that certain disclosures required under RESPA were not made.  Doc. No. 53 at ¶ 49.  Unlike the original complaint, the proposed amended complaint makes reference to specific sections of RESPA.  The proposed amended complaint only mentions defendants EquiFirst and MERS in relation to these alleged violations.

A.  <u>TILA</u>

As with the original complaint, the proposed amended complaint does not allege facts indicating that MERS is a "creditor" or "assignee" who is obligated to make disclosures or responsible when disclosures required by TILA are not made.  See 15 U.S.C. § 1602(f) (defining "creditor" under the act); 15 U.S.C. § 1641 (providing for liability of assignees).  Therefore, the proposed amended complaint does not state a viable TILA claim against MERS.

As for plaintiffs' TILA claims against EquiFirst, plaintiffs make an argument within the proposed amended complaint that the

6

claims are not time-barred because EquiFirst did not really lend money to plaintiffs and there was no "meeting of the minds" or lawful contract consummated between plaintiffs and EquiFirst. Plaintiffs assert that the limitations period for the right to rescind did not begin running until the loan contract was consummated. Plaintiffs, however, do not assert a date when the contract <u>was</u> consummated. Instead, they suggest that a lawful contract was never consummated because there was no meeting of the minds.

TILA "authorizes a borrower whose loan is secured with his 'principal dwelling,' and who has been denied the requisite disclosures, to rescind the loan transaction ...." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998). The right of rescission is completely extinguished after three years from the date of the loan's "consummation." 15 U.S.C. § 1635(f); <u>Beach</u>, 523 U.S. at 412. "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). "Contractually obligated" is defined by state law. <u>Jackson</u>, 890 F.2d at 120. According to the Kansas Supreme Court, in order to form a binding contract there must be a meeting of the minds on all the essential terms. See <u>Phillips & Easton Supply Co., Inc. v. Eleanor International Inc.</u>, 512 P.2d 379, 383 (Kan. 1973).

Plaintiffs cite the <u>Jackson</u> case in support of their argument

that the contract was never consummated.  In <u>Jackson</u>, a borrower executed a series of documents with an entity described in the documents as a "broker" or "arranger of credit."  The documents explicitly stated that the entity was <u>not</u> the lender and that the borrower was not guaranteed a loan by signing the loan documents. The court in <u>Jackson</u> held that a loan contract was not consummated for purposes of TILA until the loan broker later agreed to fund the loan.

Contrary to the situation in <u>Jackson</u>, plaintiffs' proposed amended complaint alleges that the documents plaintiffs signed on March 23, 2007 identified the lender on the promissory note and the mortgage as defendant EquiFirst.  Doc. No. 53 at ¶¶ 12 & 13.  Thus, the lender was identified and plaintiffs cannot rely upon the holding in <u>Jackson</u> to claim that there was no meeting of the minds with the lender.  The holding in the <u>Ramsey</u> case cited by plaintiffs was distinguished from <u>Jackson</u> on this basis.  <u>Ramsey</u>, 176 B.R. at 187.  This court must conclude that since plaintiffs are asking for rescission of a loan agreement pursuant to TILA in a case filed more than three years after the consummation of the agreement on March 23, 2007, their claim has expired.

Plaintiffs also appear to rely upon the <u>Jackson</u> case, even though the facts are clearly different, to claim a right of rescission on the grounds that defendant EquiFirst was a "fictitious lender" with whom there could be no "meeting of the

8

minds." However, if there was never a meeting of the minds and no contractual agreement with defendant EquiFirst, then there is no contract to rescind and no obligation upon defendant EquiFirst under TILA to make disclosures. See Rosa v. Cutter Pontiac Buick GMC, 255 Fed.Appx. 281, 282-83 (9th Cir. 11/26/2007) (without consummation of credit transaction, no TILA violation); Person v. Courtesy Motors Inc., 2001 WL 34072209 *4 (W.D.Mich. 2001) (without a meeting of the minds leading to a contract there is no TILA obligation of disclosure); Orlosky v. Empire Security Systems, Inc., 657 N.Y.S.2d 840, 842 (Sup.Ct., 3d Dept. 1997) (without a contract there is no basis for TILA protection).

      B.   RESPA

Unlike the original complaint, the proposed amended complaint asserts that defendant EquiFirst violated RESPA by failing "to inform [plaintiffs] when the note [was] transferred or assigned within 15 days prior" as required under 12 U.S.C. § 2605(b)(1), (2)(A) & (3). Doc. No. 53 at ¶ 49. These allegations appear to state a viable cause of action under RESPA.

IV.  PLAINTIFFS' SECOND CAUSE OF ACTION

In the proposed amended complaint, plaintiffs assert a claim of unjust enrichment as their second cause of action. Plaintiffs contend that defendants have no lawful authority to foreclose upon the subject property in this case. They further contend that their expenditures for insurance upon the property would cover any

9

mortgage defaults.  As explained in the court's prior order upon the motions to dismiss, the court believes the <u>Rooker-Feldman</u> doctrine prohibits the court from deciding this claim.  The court would also note that the only plaintiff listed in the state foreclosure action is defendant BONY as Grantor Trustee of the Protium Master Grantor Trust.

## V.  PLAINTIFFS' THIRD CAUSE OF ACTION

As the third cause of action in the proposed amended complaint, plaintiffs allege that defendant MLLF knowingly submitted false affidavits prepared on behalf of defendants BONY and C12 Capital Management d/b/a Protium Master Mortgage. Plaintiffs do not identify what federal or state laws were violated by this alleged action.

It appears to the court that plaintiffs are relying upon this claim to have the court go behind the state foreclosure judgment. Therefore, as explained in the court's previous order, the court believes this claim must be dismissed without prejudice under the <u>Rooker-Feldman</u> doctrine.

## VI.  PLAINTIFFS' FOURTH CAUSE OF ACTION

Although not explicitly labeled a "fourth cause of action," the proposed amended complaint, in paragraphs 56-58, attempts to describe a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 <u>et seq</u>.  Plaintiffs allege:

56. Defendants have and continue to act together in patterns of corruption by fabricating false documents, fraudulently inducing borrowers to unknowingly participate in securities fraud designed to unlawfully enrich the defendants. Also through defendants' lobbying efforts and their illusion of being professional corporations and businesses, defendants influence government agencies and courts to the detriment of the plaintiffs, the citizens of Kansas and other American homeowners, investors and taxpayers.

57. Through their extremely elaborate and highly technical schemes, which the average American and, with all due respect, the vast majority of well intending judges cannot decipher, defendants continue to commit acts of fraud on Americans, while accepting taxpayer assistance (TARP funds), insurance claims, federal and state tax write offs after defendants had already received funds from the sale of securities based from their ill gotten mortgages.

58. Finally to add insult to injury, the plaintiffs and Americans are fraudulently being foreclosed on by a foreign company registered in the Cayman Islands (Protium Finance LP) while operating under the alias of Protium MASTER MORTGAGE LP.

In order to state a claim for a violation of RICO, a plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Racketeering claims which are based on fraud are subject to FED.R.CIV.P. 9(b)'s heightened pleading standard. Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989). "Thus, a complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006) (internal quotation marks omitted),

<u>cert. denied</u>, 549 U.S. 1209 (2007).

Plaintiffs' allegations are much too broad to comply either with the pleading requirements of Rule 9(b) or with the plausibility/notice requirements of <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 544 (2007) as discussed in this court's prior order setting forth the standards applied to a Rule 12(b)(6) motion. Furthermore, if plaintiffs are claiming that they were defrauded because "real money" was not loaned to them, such a claim has been rejected by other courts. See <u>Renev. Citibank NA</u>, 32 F.Supp.2d 539, 544 (E.D.N.Y. 1999); <u>Thiel v. First Federal Savings & Loan Ass'n</u>, 646 F.Supp. 592, 596 (N.D.Ind. 1986); see also, <u>Vollmer v. Present</u>, 2011 WL 11415 at *6-7 (D.Ariz. 1/4/2011) (citing cases from other courts in the Ninth Circuit); <u>Thomas v. Countrywide Home Loans</u>, 2010 WL 1328644 at *2 (N.D.Ga. 3/29/2010) (citing cases from other courts).

VII. CONCLUSION

In conclusion, the court shall consider plaintiffs' proposed amended complaint at Doc. No. 47 to be a moot pleading and assume that plaintiffs wish to proceed upon the proposed amended complaint at Doc. No. 53. The court shall grant plaintiffs leave to file and proceed upon Doc. No. 53 solely for the purpose of bringing a RESPA claim against defendant EquiFirst. To this extent, plaintiffs' motion to amend (Doc. No. 36) is granted. The other causes of action as described in the original complaint and the amended

12

complaint shall be dismissed without prejudice. Thus, defendant EquiFirst's motion to dismiss (Doc. No. 29) is granted in part and denied in part. Defendant Barclay's motion to dismiss (Doc. No. 29) is granted and the claims against Barclay's are dismissed without prejudice. The other motions to dismiss (Doc. Nos. 13, 15, 16 and 49) are granted and the claims against defendants MERS, MLLF, C12 Capital Management LP, and BONY are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 21st day of April, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

BILLY PENNINGTON, BARBARA
PENNINGTON and all parties
similarly situated,

        Plaintiffs,

    vs.                      **Case No. 10-1344-RDR**

EQUIFIRST CORPORATION,
et al.,
        Defendants.

_____

## <u>MEMORANDUM AND ORDER</u>

I.  BACKGROUND

On January 31, 2011, this court issued an order in reaction to
motions to dismiss filed by all of the defendants in this matter.
Doc. No. 44.  The court granted plaintiffs 30 days to obtain
service of process upon defendant Bank of New York (BONY).  The
court also granted plaintiffs 30 days to submit a proposed amended
complaint which the court would assess to determine whether it
would be futile to grant plaintiffs leave to file the amended
complaint and whether the action should be dismissed as to some or
all of the defendants.  Plaintiffs have submitted a proposed
amended complaint.  Doc. No. 47.  Plaintiffs also made service upon
defendant BONY which led to a motion to dismiss from defendant
BONY.  Doc. No. 49.  In response to the motion to dismiss,
plaintiffs filed a second amended complaint (Doc. No. 53), which
the court has stated we will treat as a proposed amended complaint.

Doc. No. 55.  Plaintiffs have also filed a memorandum in opposition to defendant BONY's second motion to dismiss.  Doc. No. 54.

Plaintiffs filed their original complaint in this case on October 4, 2010.

This order addresses the question of whether plaintiffs should be permitted to file an amended complaint and whether defendants' various motions to dismiss should be granted or denied.  The court incorporates in this opinion the recitation of standards applicable to the review of <u>pro se</u> pleadings and motions to dismiss that was contained in the court's January 31, 2011 order.  Doc. No. 44 at pp. 8-10.

The court may deny leave to amend a complaint if the amendment would be futile, that is, if the complaint would be subject to dismissal for any reason even with the proposed amendment.  <u>Watson ex rel. Watson v. Beckel</u>, 242 F.3d 1237, 1239-40 (10th Cir. 2001); <u>Grossman v. Novell, Inc.</u>, 120 F.3d 1112, 1126 (10th Cir. 1997).

After comparing the two proposed amended complaints, the court shall focus upon Doc. No. 53, the later proposed amended complaint. The proposed amended complaints are similar in most important respects, but the later proposed amended complaint adds a RICO claim and a few factual allegations, while deleting some paragraphs regarding the related state foreclosure action.[1]

_____

[1] Doc. No. 53 at ¶ 6 also describes "Protium Finance LP" as a defendant, although Protium Finance LP is not listed as a defendant in the caption of the proposed amended complaint or mentioned in

II.  PLAINTIFFS' PROPOSED AMENDED COMPLAINT - Doc. No. 53

The proposed amended complaint lists four causes of action: 1) TILA/RESPA violations against defendants EquiFirst Corporation ("EquiFirst") and Mortgage Electronic Registration Systems ("MERS"); 2) unjust enrichment against all defendants; 3) submitting false documents to a court against the defendant law firm Martin, Leigh, Laws & Fritzlen ("MLLF"), as well as defendants BONY and C12 Capital Management d/b/a Protium Master Mortgage LP; and 4) a RICO claim against all defendants.

The proposed amended complaint makes the following factual allegations.  Plaintiffs signed documents presented to them by EquiFirst Corporation on March 23, 2007.  Doc. No. 53 at ¶ 11.  On the same date plaintiffs signed a promissory note for $115,200.00 listing EquiFirst as the lender and a mortgage on real property in Andover, Kansas.  Id. at ¶¶ 12 & 13.  The mortgage identifies the "nominal lender on the mortgage" as EquiFirst and states that MERS is acting solely as the nominee for the lender and the lender's successors and assigns.  Id. at ¶ 13.

The complaint further alleges that EquiFirst was a "fictitious lender" that "never funded the alleged loan" and merely transferred the promissory note to an unknown recipient.  Id. at ¶¶ 16 & 17.

---

defendant's prior pleadings.  For the reasons described in this order and the January 31, 2011 order of the court, plaintiffs shall not be granted permission to add Protium Finance LP as a defendant in this matter.

The complaint asserts that EquiFirst took the mortgage and pooled it with other mortgages as part of a trust "known as EquiFirst Loan Securitization Trust 2007-1, which was sold to underwriter, Barclays Capital, Inc., who further sold mortgage pass through certificates . . . as a securities transaction to untold numbers of buyers worldwide." <u>Id</u>. at ¶ 18. Plaintiffs allege that none of the listed defendants in this case were more than "servicing agents as none of the defendants funded the loan and defendants were never the holder in due course of the said Promissory Note and Mortgage." <u>Id</u>. at ¶ 19.

Plaintiffs state that they first became aware that their rights may have been violated on or about May 2009 and began withholding payments. <u>Id</u>. at ¶ 20. Plaintiffs allege that on or about December 28, 2009:

> defendant BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ SERVICING CORPORATION fabricated a fraudulent Assignment of Note and Mortgage naming Assignors as MERS, solely as nominee for EquiFirst Corporation, its Successors and Assigns. The assignment further named defendant The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust as the Assignee(s). . . .

> On or about January 12, 2010, defendants THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION (BONY) and defendant C12 CAPITAL MANAGEMENT LP doing business as PROTIUM MASTER MORTGAGE LP and defendant MARTIN, LEIGH, LAWS & FRITZLEN, P.C. knowingly and willing[ly] acted in concert and filed fictitious in the District Court of Butler County Kansas, Case # 2010CV0007.

> The false representations and documents filed by the defendants acting in concert with each other, led to a foreclosure judgment being issued against the plaintiffs.

4

Id. at ¶¶ 28, 29 & 30.

Paragraphs 31 through 42 of the proposed amended complaint are essentially an argument for tolling the three-year limitations period for rescinding a transaction under TILA. Plaintiffs cite Ramsey v. Vista Mortgage Corp., 176 B.R. 183 (B.A.P. 9th Cir. 1994) and Jackson v. Grant, 890 F.2d 118 (9th Cir. 1989), and argue that defendant EquiFirst is falsely representing that it loaned plaintiffs money "when in fact defendant EquiFirst was only serving as an intermediary for some other entities (Wall Street investors) to lend the plaintiff[s] money and as such no meeting of the minds ever existed, which is required for a lawful contract." Id. at ¶ 41. Plaintiffs contend that the "true lender must be identified before the 3-year limitation[s] [period] begins to run." Id. at ¶ 42.

Although the proposed amended complaint refers to rescission in the section of the document labeled "**TOLLING OF TIME FOR TILA/RESPA VIOLATIONS**," rescission is not mentioned in the complaint's description of the causes of action and claims for relief. Under "claims for relief," plaintiffs ask the court to set aside the state court foreclosure judgment and that the court find that plaintiffs are the owners in fee simple and entitled to possession of the subject property. Id. at ¶¶ 62 & 66. Plaintiffs further request that, pursuant to RICO, "defendants and their criminal organizations and enterprises be closed and dissolved, and

any other fines this Court sees fit." Id. at 66.

III.  PLAINTIFFS' FIRST CAUSE OF ACTION

Plaintiffs' first cause of action in the proposed amended complaint refers to "TILA/RESPA violations," in other words violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. and the Real Estate and Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.  In the proposed amended complaint plaintiffs allege that plaintiffs did not receive any TILA disclosures "at all" (Doc. No. 53 at ¶ 44) and that certain disclosures required under RESPA were not made.  Doc. No. 53 at ¶ 49.  Unlike the original complaint, the proposed amended complaint makes reference to specific sections of RESPA.  The proposed amended complaint only mentions defendants EquiFirst and MERS in relation to these alleged violations.

A.  TILA

As with the original complaint, the proposed amended complaint does not allege facts indicating that MERS is a "creditor" or "assignee" who is obligated to make disclosures or responsible when disclosures required by TILA are not made.  See 15 U.S.C. § 1602(f) (defining "creditor" under the act); 15 U.S.C. § 1641 (providing for liability of assignees).  Therefore, the proposed amended complaint does not state a viable TILA claim against MERS.

As for plaintiffs' TILA claims against EquiFirst, plaintiffs make an argument within the proposed amended complaint that the

6

claims are not time-barred because EquiFirst did not really lend money to plaintiffs and there was no "meeting of the minds" or lawful contract consummated between plaintiffs and EquiFirst. Plaintiffs assert that the limitations period for the right to rescind did not begin running until the loan contract was consummated. Plaintiffs, however, do not assert a date when the contract <u>was</u> consummated. Instead, they suggest that a lawful contract was never consummated because there was no meeting of the minds.

TILA "authorizes a borrower whose loan is secured with his 'principal dwelling,' and who has been denied the requisite disclosures, to rescind the loan transaction ...." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998). The right of rescission is completely extinguished after three years from the date of the loan's "consummation." 15 U.S.C. § 1635(f); <u>Beach</u>, 523 U.S. at 412. "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). "Contractually obligated" is defined by state law. <u>Jackson</u>, 890 F.2d at 120. According to the Kansas Supreme Court, in order to form a binding contract there must be a meeting of the minds on all the essential terms. See <u>Phillips & Easton Supply Co., Inc. v. Eleanor International Inc.</u>, 512 P.2d 379, 383 (Kan. 1973).

Plaintiffs cite the <u>Jackson</u> case in support of their argument

that the contract was never consummated. In <u>Jackson</u>, a borrower executed a series of documents with an entity described in the documents as a "broker" or "arranger of credit." The documents explicitly stated that the entity was <u>not</u> the lender and that the borrower was not guaranteed a loan by signing the loan documents. The court in <u>Jackson</u> held that a loan contract was not consummated for purposes of TILA until the loan broker later agreed to fund the loan.

Contrary to the situation in <u>Jackson</u>, plaintiffs' proposed amended complaint alleges that the documents plaintiffs signed on March 23, 2007 identified the lender on the promissory note and the mortgage as defendant EquiFirst. Doc. No. 53 at ¶¶ 12 & 13. Thus, the lender was identified and plaintiffs cannot rely upon the holding in <u>Jackson</u> to claim that there was no meeting of the minds with the lender. The holding in the <u>Ramsey</u> case cited by plaintiffs was distinguished from <u>Jackson</u> on this basis. <u>Ramsey</u>, 176 B.R. at 187. This court must conclude that since plaintiffs are asking for rescission of a loan agreement pursuant to TILA in a case filed more than three years after the consummation of the agreement on March 23, 2007, their claim has expired.

Plaintiffs also appear to rely upon the <u>Jackson</u> case, even though the facts are clearly different, to claim a right of rescission on the grounds that defendant EquiFirst was a "fictitious lender" with whom there could be no "meeting of the

minds." However, if there was never a meeting of the minds and no contractual agreement with defendant EquiFirst, then there is no contract to rescind and no obligation upon defendant EquiFirst under TILA to make disclosures. See <u>Rosa v. Cutter Pontiac Buick GMC</u>, 255 Fed.Appx. 281, 282-83 (9th Cir. 11/26/2007) (without consummation of credit transaction, no TILA violation); <u>Person v. Courtesy Motors Inc.</u>, 2001 WL 34072209 *4 (W.D.Mich. 2001) (without a meeting of the minds leading to a contract there is no TILA obligation of disclosure); <u>Orlosky v. Empire Security Systems, Inc.</u>, 657 N.Y.S.2d 840, 842 (Sup.Ct., 3d Dept. 1997) (without a contract there is no basis for TILA protection).

    B.   <u>RESPA</u>

Unlike the original complaint, the proposed amended complaint asserts that defendant EquiFirst violated RESPA by failing "to inform [plaintiffs] when the note [was] transferred or assigned within 15 days prior" as required under 12 U.S.C. § 2605(b)(1), (2)(A) & (3). Doc. No. 53 at ¶ 49. These allegations appear to state a viable cause of action under RESPA.

IV.  PLAINTIFFS' SECOND CAUSE OF ACTION

In the proposed amended complaint, plaintiffs assert a claim of unjust enrichment as their second cause of action. Plaintiffs contend that defendants have no lawful authority to foreclose upon the subject property in this case. They further contend that their expenditures for insurance upon the property would cover any

mortgage defaults. As explained in the court's prior order upon the motions to dismiss, the court believes the Rooker-Feldman doctrine prohibits the court from deciding this claim. The court would also note that the only plaintiff listed in the state foreclosure action is defendant BONY as Grantor Trustee of the Protium Master Grantor Trust.

## V. PLAINTIFFS' THIRD CAUSE OF ACTION

As the third cause of action in the proposed amended complaint, plaintiffs allege that defendant MLLF knowingly submitted false affidavits prepared on behalf of defendants BONY and C12 Capital Management d/b/a Protium Master Mortgage. Plaintiffs do not identify what federal or state laws were violated by this alleged action.

It appears to the court that plaintiffs are relying upon this claim to have the court go behind the state foreclosure judgment. Therefore, as explained in the court's previous order, the court believes this claim must be dismissed without prejudice under the Rooker-Feldman doctrine.

## VI. PLAINTIFFS' FOURTH CAUSE OF ACTION

Although not explicitly labeled a "fourth cause of action," the proposed amended complaint, in paragraphs 56-58, attempts to describe a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Plaintiffs allege:

56. Defendants have and continue to act together in patterns of corruption by fabricating false documents, fraudulently inducing borrowers to unknowingly participate in securities fraud designed to unlawfully enrich the defendants. Also through defendants' lobbying efforts and their illusion of being professional corporations and businesses, defendants influence government agencies and courts to the detriment of the plaintiffs, the citizens of Kansas and other American homeowners, investors and taxpayers.

57. Through their extremely elaborate and highly technical schemes, which the average American and, with all due respect, the vast majority of well intending judges cannot decipher, defendants continue to commit acts of fraud on Americans, while accepting taxpayer assistance (TARP funds), insurance claims, federal and state tax write offs after defendants had already received funds from the sale of securities based from their ill gotten mortgages.

58. Finally to add insult to injury, the plaintiffs and Americans are fraudulently being foreclosed on by a foreign company registered in the Cayman Islands (Protium Finance LP) while operating under the alias of Protium MASTER MORTGAGE LP.

In order to state a claim for a violation of RICO, a plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Racketeering claims which are based on fraud are subject to FED.R.CIV.P. 9(b)'s heightened pleading standard. Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989). "Thus, a complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006) (internal quotation marks omitted),

11

<u>cert. denied</u>, 549 U.S. 1209 (2007).

Plaintiffs' allegations are much too broad to comply either with the pleading requirements of Rule 9(b) or with the plausibility/notice requirements of <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 544 (2007) as discussed in this court's prior order setting forth the standards applied to a Rule 12(b)(6) motion. Furthermore, if plaintiffs are claiming that they were defrauded because "real money" was not loaned to them, such a claim has been rejected by other courts. See <u>Renev. Citibank NA</u>, 32 F.Supp.2d 539, 544 (E.D.N.Y. 1999); <u>Thiel v. First Federal Savings & Loan Ass'n</u>, 646 F.Supp. 592, 596 (N.D.Ind. 1986); see also, <u>Vollmer v. Present</u>, 2011 WL 11415 at *6-7 (D.Ariz. 1/4/2011) (citing cases from other courts in the Ninth Circuit); <u>Thomas v. Countrywide Home Loans</u>, 2010 WL 1328644 at *2 (N.D.Ga. 3/29/2010) (citing cases from other courts).

VII.   CONCLUSION

In conclusion, the court shall consider plaintiffs' proposed amended complaint at Doc. No. 47 to be a moot pleading and assume that plaintiffs wish to proceed upon the proposed amended complaint at Doc. No. 53.  The court shall grant plaintiffs leave to file and proceed upon Doc. No. 53 solely for the purpose of bringing a RESPA claim against defendant EquiFirst.  To this extent, plaintiffs' motion to amend (Doc. No. 36) is granted.  The other causes of action as described in the original complaint and the amended

complaint shall be dismissed without prejudice. Thus, defendant EquiFirst's motion to dismiss (Doc. No. 29) is granted in part and denied in part. Defendant Barclay's motion to dismiss (Doc. No. 29) is granted and the claims against Barclay's are dismissed without prejudice. The other motions to dismiss (Doc. Nos. 13, 15, 16 and 49) are granted and the claims against defendants MERS, MLLF, C12 Capital Management LP, and BONY are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 21st day of April, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge